### In re James D. GILMORE, Debtor.

### Bankruptcy No. 91–01211–WB–3.

United States Bankruptcy Court, M.D. Tennessee.

May 29, 1991.

---

**407**

John S. Hicks, Dearborn & Ewing, Nashville, Tenn., for debtor in possession.

Martin D. Davis, Nashville, Tenn., for U.S. Trustee.

### MEMORANDUM OPINION AND ORDER ON U.S. TRUSTEE'S OBJECTION TO DEBTOR'S EMPLOYMENT OF DEARBORN & EWING

WILLIAM H. BROWN, Bankruptcy Judge, Sitting by Designation.

The debtor filed his voluntary Chapter 11 petition on February 5, 1991, with the petition signed by the debtor and by John S. Hicks of the firm of Dearborn & Ewing as attorneys. On the same date, the debtor filed his application to employ Dearborn & Ewing, pursuant to 11 U.S.C. § 327 and Bankruptcy Rule 2014. The application revealed that Dearborn & Ewing had been employed prior to the bankruptcy filing and that the debtor had pledged a first mortgage bond of the Victory Fellowship of Tennessee, Inc. (the "Bond") to the law firm as security for both pre and postpetition fees and expenses.

The application also revealed that Dearborn & Ewing was owed $10,000.00 by James D. Gilmore for prepetition services, which obligation had been satisfied by the execution and acceptance of a note and pledge agreement signed by Patricia Shearon Sanders and payable to Dearborn & Ewing. The Sanders' note and pledge did not represent property of this estate, and Dearborn & Ewing agreed not to seek payments from the estate for any of its prepetition nonbankruptcy claim. The U.S. Trustee does not object to this satisfaction of the law firm's prepetition debt, and this issue is not before the Court.

On February 7, 1991, two days after the filing of the bankruptcy, James D. Gilmore and Dearborn & Ewing entered into an Engagement Agreement, which provided, in pertinent part:

1. Gilmore acknowledged a debt of $1,000.00 for current bankruptcy related services through February 7, 1991;

2. Gilmore had delivered the Bond as collateral to secure the law firm's bankruptcy fees and expenses, and a security interest was granted in the Bond and its proceeds;

3. The Bond was otherwise unencumbered;

4. The parties acknowledged that this Court must approve the law firm's fees and expenses; and

5. The law firm agreed to charge its customary rates, ranging from $40.00 per hour for paralegals to $150.00 per hour for senior attorneys.

An affidavit executed by John S. Hicks stated that Dearborn & Ewing does not represent any interest adverse to the interests of James D. Gilmore.

On February 15, 1991, the U.S. Trustee objected to the order entered February 7, 1991, by Chief Judge George C. Paine, II on the basis that the security interest in the Bond rendered the law firm "not disinterested" and in violation of 11 U.S.C. § 327. The U.S. Trustee further prayed that "at the very least [the Engagement Agreement] should be noticed to all creditors and parties in interest and should be evaluated by the Court."

Due to a conflict, the case was subsequently reassigned from Judge Paine to Judge William Houston Brown, sitting by designation of the Court of Appeals for the Sixth Circuit.

Dearborn & Ewing did notice the Engagement Agreement to all creditors on the matrix, and on May 1, 1991, a hearing was held on the U.S. Trustee's objection. No other creditors objected or appeared. The U.S. Trustee took the position that the security interest in the Bond gave Dear-

born & Ewing a potential conflict, and the U.S. Trustee urged the Court to adopt a *per se* rule that a professional employed by the debtor may not be a creditor of that debtor. *See, e.g., In re Pierce*, 809 F.2d 1356 (8th Cir.1987).

Dearborn & Ewing, on the other hand, advocated a case by case approach, as found in *In re Martin*, 817 F.2d 175 (1st Cir.1987). Further, at the hearing, Dearborn & Ewing stated that the $40,000.00 face value Bond had a present value of $20,000.00. Dearborn & Ewing urged that the Bond was the equivalent of a cash retainer, in view of the fact that the debtor was unable to make a cash retainer. Finally, Dearborn & Ewing stated that it was its intention to present application for all fees and expenses to the Court for approval and to seek payment for approved amounts from the debtor in possession's operating income. Only in the event that the debtor in possession was unable to otherwise pay approved fees and expenses would the law firm invade the Bond. If the firm is otherwise paid in full for all approved fees and expenses, the law firm will return the Bond or any unused portion to the debtor in possession. Finally, Mr. Hicks, for the law firm, stated that the firm was willing to surrender its security in the bond rather then be disqualified from representing Mr. Gilmore.

## CONCLUSIONS OF LAW

A "disinterested person," as required by 11 U.S.C. § 327 for employment of professional persons, is defined in 11 U.S.C. § 101(13) as meaning a person that, among other factors, "is not a creditor, an equity security holder, or an insider," and "does not have an interest materially adverse to the interest of the estate ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason." 11 U.S.C. § 101(13)(A) and (E).

The Court first notes that this security interest was apparently transferred two days after the bankruptcy filing. At least that is the case with the Engagement Agreement, which refers to the security interest in the Bond. This transfer would thus be a postpetition transaction which may be avoidable by the debtor in possession under 11 U.S.C. § 549 unless the Court otherwise authorizes the transfer. 11 U.S.C. § 549(a)(2)(B).

The Eighth Circuit has taken the position that an attorney's posture as a prepetition creditor and mortgagee on the debtor's realty to secure payment of pre and postpetition services rendered that attorney in violation of § 101(13). The attorney was not disinterested and was "subject to disqualification under Section 327(a)." *In re Pierce*, 809 F.2d at 1362. In the present case, the security is being held only for bankruptcy services. Also, it should be observed that Dearborn & Ewing did reveal its security interest in its application for employment, a fact which distinguishes this case from *Pierce*. 809 F.2d at 1363; *compare In re Automend, Inc.*, 85 B.R. 173, 179 (Bankr. N.D.Ga.1988) (Employment application should provide factual or legal grounds for approval of the fee and security arrangements).

This Court is not comfortable with the *Pierce per se* rule, simply because the facts of a given case, as here, may mandate a variation from the rule. The approach of the First Circuit in *In re Martin* seems to be more realistic. In *Martin*, the attorney fully revealed a prepetition note and second mortgage on the debtors' real estate. The *Martin* Court stated that "a literalistic reading [of § 327(a)] defies common sense and must be discarded as grossly overbroad. After all, any attorney who may be retained or appointed to render professional services to a debtor in possession becomes a creditor of the estate just as soon as any compensable time is spent on account." 817 F.2d at 180.

As the *Martin* Court further stated, § 327(a) does "not support, either by its terms or by its objectives, a bright-line rule precluding an attorney at all times and under all circumstances from taking a security interest to safeguard the payment of [the attorney's] fees." 817 F.2d at 181. This Court agrees and concludes that a *per se* rule is not practicable. Rather, the

Court should examine the circumstances of each case to determine if the security interest in favor of the attorney is necessary or is overreaching by the attorney. Ultimately, the Court must decide if the potential conflict between the attorney's financial interest and the interests of the estate and its creditors rises to a level at which the "lawyer's interest [is] materially adverse to the estate or the creditors." 817 F.2d at 182.

Bankruptcy Judge R. Guy Cole, Jr. has organized the *Martin* Court's guidance into the following nonexhaustive list of factors:

1. the reasonableness of the arrangement and whether it was negotiated in good faith;

2. whether the security demanded was commensurate with the predictable magnitude and value of the foreseeable services;

3. whether it was a needed means of ensuring the engagement of competent counsel;

4. whether or not there are telltale signs of overreaching;

5. the nature and extent of any conflict arising from the taking of a security interest as well as the likelihood that a potential conflict might turn into an actual one;

6. the influence the putative conflict may have in subsequent decision-making;

7. how the matter likely appears to creditors and to other parties in legitimate interest, given the importance of perceptions by the creditor body and the problem at large;

8. whether the existence of the security interest threatens to hinder or to delay the effectuation of a plan;

9. whether the security interest granted is (or could be perceived as) an impediment to reorganization;

10. whether the fundamental fairness of the proceedings might be unduly jeopardized either by the actuality of the arrangement or by the reasonable public perception of it.

*In re Watson,* 94 B.R. 111, 115 (Bankr.S.D. Ohio 1988), *citing In re Martin,* 817 F.2d at 182. This Court adopts the case by case analysis of *Martin* and *Watson.*

In the present case, the law firm did reveal the security interest in the bond by attaching a copy of the Engagement Agreement to the application for employment filed with the Court. At the request of the U.S. Trustee, the existence of the security interest was noticed to the entire mailing matrix and no one other than the U.S. Trustee objected or appeared at the hearing. The debtor was unable to pay a cash retainer and the unencumbered bond was given in lieu of, rather than in addition to, a normal cash retainer. The amount of the bond and its estimated present value is not an unreasonable retainer amount for a Chapter 11 case of this type and size. There are no signs of overreaching by Dearborn & Ewing, as evidenced by the firm's willingness to surrender the security interest rather than forfeit its representation of this debtor. Perhaps most significant as a factor is the assertion by Mr. Hicks for Dearborn & Ewing that the firm will not look to the Bond except as a last resort in the event of nonpayment of approved fees and expenses. Moreover, the firm will not invade the Bond before getting this Court's permission to so act. Under these circumstances, the Court will maintain control over the disposition of the Bond and there is little risk that the security interest will adversely affect the firm's representation of the debtor in possession.

Under all of the circumstances, the Court does not find this security interest to be fundamentally unfair to the estate or its creditors nor does the Court find a likelihood that the security interest will cause Dearborn & Ewing's interest to be materially adverse to that of the debtor, this estate or its creditors.

Having reached those findings and conclusions, the Court is nevertheless mindful that in applying an analysis to each case involving a security interest in favor of a professional, "the bankruptcy court *must* —no matter how unpleasant a task it may be—ensure the integrity of the bankruptcy

**410**

process. The interests of maintaining public confidence in the bankruptcy system must prevail." *In re Watson*, 94 B.R. at 117 (citations omitted). In other words, this is in the final analysis a balancing test, and doubt must be weighed against the security interest. This Court has found that the balance in the present case favors Dearborn & Ewing.

IT IS THEREFORE ORDERED:

1. That the U.S. Trustee's objection to the employment of Dearborn & Ewing is denied;

2. That Dearborn & Ewing may continue to represent the debtor in possession; and

3. That Dearborn & Ewing may retain the security interest in the Bond, provided that all fees and expenses sought by Dearborn & Ewing are presented to the Court for approval, after notice and hearing, and that Dearborn & Ewing not exercise its security interest in the Bond without first moving the Court for approval.

SO ORDERED.