**In re DECOR CORPORATION, dba The Art Works and dba The Picture Show, an Ohio corporation, Debtor.**

**Bankruptcy No. 93–56830.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Feb. 15, 1994.

Michael S. Kranitz, Benesch, Friedlander, Coplan & Aronoff, Columbus, OH, for debtor.

Alexander G. Barkan, Office of U.S. Trustee, Columbus, OH.

Frederick M. Luper, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, OH, for Unsecured Creditors Committee.

Brenda L. Dodrill, Asst. U.S. Atty., Columbus, OH.

Sonja Chae, S.E.C., Chicago, IL.

Andrew S. Conway, Miro Miro & Weiner, Bloomfield Hills, MI.

James B. Doyle, III, Genesee Management, Inc., Rochester, NY.

Vicki B. Finkelstein, The Rouse Co., Columbia, MD.

F. Mitchell Dutton, Columbus Southern Power Co., Columbus, OH.

Eric C. Cotton, Pyramid Management Group, Inc., Syracuse, NY.

Samuel R. Grafton, Popper & Grafton, New York City.

Philip A. MacNaughton, MacNaughton, Burdzinski & Yow, L.L.P., Bellaire, TX.

David L. Pollack, Jeffrey Meyers, Gary M. Friedland, Rosenwald and Pollack, Philadelphia, PA.

Lawrence R. LaSusa, Homart Development Co., Chicago, IL.

John Urie (Interim Chairperson), Committee of Unsecured Creditors, Paramus, NJ.

Albert B. Krachman, Bracewell & Patterson, L.L.P., Washington, DC.

Yvette A. Cox, Arter & Hadden, Columbus, OH.

Jessica Tovrov, Katten, Muchin & Zavis, Chicago, IL.

Ron K. Barger, Earnest Leonard, Strasburger & Price, L.L.P., Dallas, TX.

Thomas R. Allen, Bonnie I. O'Neill, Thompson, Hine and Flory, Columbus, OH.

Kevin M. Newman, Menter, Rudin & Trivelpiece, P.C., Syracuse, NY.

Thomas P. Butler, Jr., Susan J. Demaske, Society Nat. Bank, Cleveland, OH.

Phyllis Schauffler, Sp. Asst. Atty. Gen., Dept. of Revenue, General Counsel's Office, Jefferson City, MO.

Sandel Glass, Inc., Keith W. Lusk, Lusk Law Office, Fresno, CA.

B–Mall Co., Scott E. Wasserman, Lewis, Rice & Fingerash, Kansas City, MO.

Sonya S. Stokes, Buck, Bohm & Stein, P.C., Leawood, KS.

Stephen A. Santangelo, Weltman, Weinberg & Associates Co., L.P.A., Columbus, OH.

Joan E. Pilver, Asst. Atty. Gen., Hartford, CT.

Louis F. Solimine, Thompson, Hine and Flory, Cincinnati, OH.

John Mark Stern, Asst. Atty. Gen., Eileen Hallman, Paralegal, Office of the Atty. Gen., Collections/Bankruptcy Section, Austin, TX.

Jonathan C. Hantke, Sherri B. Manuel, Houston, TX.

## *MEMORANDUM OPINION AND ORDER ON MOTION TO RECONSIDER DEBTOR'S APPLICATION TO EMPLOY BENESCH, FRIEDLANDER, COPLAN & ARONOFF AS ITS GENERAL ATTORNEYS*

CHARLES M. CALDWELL, Bankruptcy Judge.

On November 10, 1993, Decor Corporation dba The Art Works and dba The Picture Show, an Ohio corporation ("Debtor") filed a voluntary petition for reorganization under chapter 11 of the United States Bankruptcy Code. The Debtor is engaged in the manufacture and retail sale of moderately-priced art through sixty-one (61) retail outlets in shopping malls in sixteen (16) states and the District of Columbia. The Debtor has expressed a strong desire to reorganize quickly in view of a deadline dictated by a debt reduction agreement reached with a major secured creditor and in response to a change in the tax law that may adversely impact upon the Debtor's reorganization. The Debtor has indicated that substantial work toward the reorganization of its operations has taken place pre-petition, and that the instant pro-

ceeding was filed in November to maximize its potential to meet the identified deadline. In these endeavors, the Debtor has retained the services of the law firm of Benesch, Friedlander, Coplan & Aronoff ("BFCA") that assisted in its pre-petition efforts, and which it wishes to retain as its official counsel post-petition. BFCA is experienced and highly regarded in bankruptcy matters, and possesses the facilities to aid the Debtor in its reorganization efforts.

On November 10, 1993, BFCA filed retention papers, including the requisite affidavit that purported to identify all of its connections and the existence of any factors that may render it ineligible for retention. In the initial affidavit BFCA disclosed:

> Beginning in August 1992, BFCA rendered general legal services to Decor ..., including, most recently, legal advice and counsel in connection with preparation for the commencement of the captioned chapter 11 case.

**Original Affidavit at p. 1**

> ... In addition BFCA has in the past and may continue to represent other parties in interest in matters unrelated to Decor or the captioned chapter 11 case, including Edward J. DeBartolo Corporation, a lessor of three store locations, in matters unrelated to this case.

**Original Affidavit at p. 2**

> ... Within the thirty days prior to bankruptcy, BFCA received approximately Forty Nine Thousand Four Hundred Dollars ($49,400.00) in payment of current fees as well as a retainer of two thousand dollars ($2,000.00) for services to be rendered and fees to be incurred for or on behalf of Decor in connection with this Chapter 11 case.

**Original Affidavit at pp. 2–3**

In response to the inquiries of the Court regarding the nature of BFCA's representation of DeBartolo Corporation ("EDC") and the payments, BFCA filed an Amended Affidavit on December 23, 1993. This Amended Affidavit provided additional information:

> ... Although BFCA does not serve as general outside counsel for EDC, it continues to work on matters for EDC which are unrelated to this case or the leases involved herein. BFCA did not and will not perform any work on behalf of EDC in connection with the three store locations leased to Decor by EDC. In the event that Decor and EDC become involved in any negotiations or contested issues in which Decor requires legal representation, Decor will retain, subject to this Court's approval, special counsel pursuant to 11 U.S.C. § 327(e). EDC has waived any actual or potential conflict of interest with respect to BFCA'S representation of Decor in this case.

**Amended Affidavit at p. 2**

> ... On November 4, 1993, Decor paid BFCA the sum of $19,756.00 on account of an invoice dated October 29, 1993 covering services rendered by BFCA in the ordinary course of business for the four months preceding October 1993. On November 10, 1993, prior to the filing of its voluntary petition, Decor paid BFCA, via wire transfer, the sum of $34,150.00 on account of an invoice dated November 8, 1993 covering services contemporaneously rendered during October and November 1993. BFCA received no retainer for services to be performed during the bankruptcy case.

**Amended Affidavit at p. 3**

Upon review of the Amended Affidavit, the Court became concerned that actual or potential conflicts may exist that would disqualify BFCA. These concerns were expressed to BFCA during a hearing on January 24, 1994. Additional information on the nature of services performed for the Debtor during the ninety (90) days preceding filing was requested, in addition to more detail on the exact nature of BFCA's representation of EDC. Subsequent to the hearing on January 24, 1994, the Court entered an order denying the retention of BFCA without prejudice to reconsideration upon the submission of the requested information.

On January 25, 1994, the Debtor filed a Motion to Reconsider. On February 3, 1994, the Debtor filed a Supplement to and Memorandum in Support of Motion to Reconsider Debtor's Application to Employ BFCA and a Supplemental Affidavit of Michael S. Kranitz

on behalf of BFCA. In view of the impendent hearing on the Debtor's disclosure statement scheduled for February 18, 1994, and the need to resolve retention issues, the Court granted Debtor's request for an expedited hearing on its Motion to Reconsider.

In the Supplemental Affidavit ("Third Affidavit") it was disclosed that BFCA represents EDC on 113 matters pertaining to collections, forcible entry and detainer actions, zoning issues, real estate matters, an audit letter response and contract issues. BFCA supplied as an attachment to the Third Affidavit a listing of the matters (Exhibit A attached to this Memorandum), and further BFCA represented that, "... None of the matters in which BFCA represents EDC involves, nor has any past matter involved, either directly or indirectly, Decor Corporation or any of its stores." Third Affidavit at p. 3.

In addition, the Third Affidavit contained as an exhibit a detail of the services rendered by BFCA for the Debtor and payments received within thirty (30) days prior to the filing. (Exhibit B attached to this Memorandum). A review of this attachment indicates that services were commenced as early as May, 1993, and were concluded as late as November 8, 1993, two days prior to the filing. The first payment on these services was not received by BFCA until November 4, 1993, and the last payment was received on November 10, 1993. Payments were received by check on November 4, 1993 (approximately $19,755), and by wire transfer on November 10, 1993 (approximately $34,151) for a total of approximately $53,906.

According to the attachment (Exhibit B) to the Third Affidavit, that broadly summarized and categorized the work performed, it included corporate restructuring, lease restructuring, procurement of financing, research on tax issues and the preparation of bankruptcy pleadings, etc.

The United States Bankruptcy Code, the Bankruptcy Rules and rules of this Court impose stringent requirements on the eligibility of counsel to represent a chapter 11 debtor. It is important to remember that a chapter 11 debtor becomes a fiduciary upon the date of filing and must act in the best interests of all creditors. 11 U.S.C. § 1107(a). Section 327(a) of the Code provides:

... (T)he trustee (debtor), with the court's approval, may employ one or more attorneys, ... **that do not hold or represent an interest adverse to the estate, and that are disinterested persons,** to represent or assist the trustee (debtor) in carrying out the trustee's (debtor's) duties under this title. (emphasis supplied)

Section 101(14) of the Code defines a "disinterested person" in relevant part as an individual that:

(A) **is not a creditor,** an equity security holder, or an insider;

....

(E) **does not have an interest materially adverse to the interest of the estate** or of any class of creditors or equity security holders, **by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or ... for any other reason;** (emphasis supplied)

In addition to these stringent requirements of representation, the drafters of the Code recognized that not all relationships and connections should disqualify professionals. Section 1107(b) provides:

Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession **solely** because of such person's employment by or representation of the debtor before the commencement of the case. (emphasis supplied)

Section 327(c) of the Code provides:

In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section **solely** because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest. (emphasis supplied)

In addition to these statutory provisions Bankruptcy Rule 2014 and Local Bankruptcy Rule 4.3(b) impose detailed requirements for

the information and certifications that must be provided, so that the court can determine eligibility for retention in light of the above detailed provisions.

The retention of chapter 11 professionals is second only to the compensation of such professionals in terms of the difficult issues and choices that are presented to chapter 11 debtors, the professionals they seek to retain and the court. Professional retention presents a multitude of critical factors and concerns that necessarily must be addressed early in chapter 11 bankruptcy cases.

It is evident that the economic pressures on professionals and the inherent delay and risk in receiving payment in a chapter 11 proceeding leads to instances where there are economic relationships between the professional and the debtor prior to the filing. Such relationships include instances where the prospective professional is owed sums for pre-petition work, has taken a security interest in estate assets to secure payment of fees, or has been paid for pre-petition services shortly before the filing of the bankruptcy case.

In such cases, as here, the parties and the court are faced with circumstances that may well dictate that the prospective professional is disqualified because it is a creditor or a potential defendant in avoidance actions. These difficulties are further exacerbated by the understandable need for debtors to retain counsel of choice, who in most instances have the most knowledge of the case, and with whom they have the greatest likelihood of completing a successful reorganization. This observation is especially true for chapter 11 debtor's counsel, who carries the laboring oar in the absence of the appointment of a trustee.

 In view of the serious ramifications of the disqualification of counsel, the disclosure provisions dictated by the Bankruptcy Rules and Local Bankruptcy Rules are of paramount importance. It is absolutely essential that to eliminate any possible damage to the estate there be timely, accurate and complete disclosure in the retention papers. The parties and the court should not be forced to engage in an exhaustive search of the record, and have very little clue as to what questions

bear on qualification. *In re Carrousel Motels, Inc.,* 97 B.R. 898, 900 (Bankr.S.D.Ohio 1989); *In re Martin,* 817 F.2d 175, 182 (1st Cir.1987); *In re Watson,* 94 B.R. 111, 117–118 (Bankr.S.D.Ohio 1988); *In re Amdura Corp.,* 139 B.R. 963, 977 (Bankr.D.Colo.1992); *In re American Thrift & Loan Ass'n,* 137 B.R. 381, 387 (Bankr.S.D.Ca.1992); *In re Lee Way Holding Co.,* 100 B.R. 950, 955 (Bankr. S.D.Ohio 1989).

 In examining retention requests the Court must be mindful to preserve the integrity of the bankruptcy process, guard against potential conflicts, address actual conflicts and ensure that debtor's counsel is primarily concerned with the best interests of the estate and not their own financial interests or interests of others they may represent. *In re Watson* at 116; *In re Martin* at 183. This is the essence of being "disinterested". It does not matter that no party has objected or that parties have consented; it is uniquely the responsibility of the Court to determine qualification at the commencement of the case and not leave that issue to the discretion of the parties or address the issues after the fact. *In re Martin,* at 181–182; *In re American Printers & Lithographers, Inc.,* 148 B.R. 862, 867 (Bankr.N.D.Ill.1992).

 In conducting an inquiry of the qualification of counsel where there is a history of pre-petition payments or the taking of security interests, or where there is some relationship with creditors of the estate, courts generally refuse to follow a *per se* rule that counsel is disqualified. Instead, the facts are viewed on a case-by-case basis, and the totality of circumstances must be assessed in making a final determination. *In re Watson* at 116; *In re Martin* at 182; *In re Gilmore,* 127 B.R. 406, 408–409 (Bankr.M.D.Tenn. 1991).

 The Court may not utilize its equitable powers to disregard facts that evidence disqualification of counsel on the basis of expediency or necessity for the reorganization of the estate. *In re Middleton Arms, Ltd. Partnership,* 119 B.R. 131, 134 (D.M.D.Tenn.1990), *aff'd* 934 F.2d 723 (6th

Cir.1991); *In re M–H Group, Inc.,* 139 B.R. 836, 840 (Bankr.N.D.Ohio 1991). In appropriate circumstances, however, where disqualifying factors are identified, the court may impose "curative" measures that require counsel to take some action that allows the court to determine that counsel is disinterested and does not have or represent any adverse interest to the estate. *In re PHM Credit Corporation,* 110 B.R. 284, 287 (E.D.Mich.1990), *compare In re M–H Group, Inc.* at 840 (Court declined to employ curative measures given the facts).

■ Upon review of all of the disclosures made by BFCA in the light of the applicable rules, statutory provisions and case law detailed above, the Court has come to final conclusions regarding the eligibility of BFCA. Regarding the issue of pre-petition payments, but for the ability of the Debtor to pay BFCA, albeit it on the eve of the bankruptcy filing, BFCA would have been a creditor of the estate and subject to the statutory disqualification mandated by section 101(14)(A). In the absence of a waiver of its unsecured claim—the ultimate "curative" measure—BFCA would have been non-disinterested. *In re 419 Co.,* 133 B.R. 867, 869 (Bankr.N.D.Ohio 1991). Here, creditor status has been avoided by receiving payment within the ninety (90) days prior to the filing, and such transfers may well constitute preferential payments. This role as a prospective defendant may constitute a disqualifying adverse interest and render BFCA ineligible to claim the designation of a "disinterested" professional because BFCA loses its ability to independently and objectively represent the Debtor. *In re American Thrift & Loan Ass'n,* at 388; *In re 419 Co.,* at 869–870. In such instances:

> There is a concern that a firm so situated might not objectively assess whether any payment was voidable as a preference. Moreover, assuming the firm recognizes the problem, as it should, the firm may also hesitate to recommend that the debtor pursue other persons or entities similarly situated to recover assets for the benefit of the estate because the parallel circumstances might be recognized by the client

or some third party. *In re American Thrift* at 387.

■ Further, the receipt of funds from a prospective debtor on the heels of the bankruptcy filing, including wire transfers on the date of filing for work performed dating back to May, 1993, creates an unfavorable appearance and calls into question the integrity of the bankruptcy process. If the bankruptcy process has no other meaning, it is that parties can be assured that the estate will be preserved and that there will be an equitable distribution to all creditors.

The Court recognizes that some pre-petition financial involvement between a chapter 11 debtor and its counsel of choice is inevitable, and counsel should not be automatically penalized because of the pre-petition relationship. There has been carved out an extremely limited exception to disqualification in such instances where the work performed pertains to preliminary work routinely undertaken to facilitate the filing, i.e., petition preparation and the associated "first day" papers. *In re Watson,* 114. To take the suggested approach of BFCA, however, where all of the pre-petition work is characterized as in contemplation or in aid of the filing, would constitute an inappropriate expansion of a very narrow exception.

Regarding BFCA's representation of EDC, the Court recognizes that waivers have been obtained, that the representation of EDC has concerned unrelated matters, that only three leases between EDC and the Debtor are involved, and that currently there is no dispute regarding the leases. It is evident, however, that while BFCA may not be general counsel for EDC, there is a significant attorney client relationship in view of the 113 matters which BFCA recently disclosed it is handling. Also, it is evident that the Debtor's ability to deal effectively with its leasehold interests is of paramount importance to the reorganization. The concern is that the Debtor have counsel who has the ability to deal freely with all lessors and that any real or potential obstacles be avoided. *In re American Printers & Lithographers, Inc.,* at 866; *In re Amdura Corporation,* at 977.

This case presents a situation that would have been aided by more complete, accurate and timely disclosure. While it is not an instance of the total lack of disclosure, given the sums exchanged, their proximity to the filing and given the significant representation of the EDC, the information supplied just recently should have been set forth initially, and would have saved substantial time. This case involves significant appearance problems and potential conflicts that would ordinarily persuade the Court to disqualify counsel. The Court, however, is persuaded by two factors that such a drastic measure should not be employed. First, disqualification at this juncture may have a negative impact upon the Debtor that has a strong desire and opportunity to reorganize quickly. Second, the Court is of the view that certain curative measures will effectively remove the disqualifying factors.

Regarding the pre-petition payments, BFCA must immediately return all funds received from the Debtor on or within the ninety (90) days before filing. The Court will consider at the first interim fee award whether some initial services in the spirit of *In re Watson, supra,* may be deemed compensable as having been beneficial and essential to the estate. Such services will be extremely limited and would only include petition preparation and other functions commonly associated with the advent of a reorganization proceeding.

Regarding the representation of EDC, BFCA must cease all work on the three leases. Further, special counsel or counsel for the Creditors' Committee, if eligible, and willing, must take on the responsibility of reviewing the EDC leases and represent the Debtor with reference to those leases in order to ensure that the Debtor's best interests have been and are addressed.

In view of the facts of this case, the Court has concluded that these curative measures preserve the integrity of the bankruptcy process, ensure that any potential and actual conflicts are avoided while at the same time preserving Debtor's choice of counsel in its reorganization efforts. Upon certification that these curative measures have been implemented the Court will enter an order approving the retention of BFCA.

**IT IS SO ORDERED.**

EXHIBIT A
EDWARD J. DEBARTOLO CORPORATION
Open Matters With BFCA as of 1/28/94

| Matter Name | Type of Matter | Office Handling |
| --- | --- | --- |
| 1992 Audit Letter | Audit | Columbus |
| Barn Door Randall, Inc. | Collection | Cleveland |
| Benvenuto Corporation | Collection | Cleveland |
| Betty Lee Company, Inc. | Collection | Cleveland |
| Cadillac Music Corporation | Collection | Cleveland |
| Canary Travel and Tour Co. | Collection | Cleveland |
| Capri Pizza | Collection | Cleveland |
| Chess King | Collection | Cleveland |
| D.O.C. Optics | Collection | Cleveland |
| Danten, Inc. | Collection | Cleveland |
| Diamonds Men's Wear | Collection | Cleveland |
| Diet Center | Collection | Cleveland |
| Fan Fever, Inc.—Randall | Collection | Cleveland |
| Fan Fever, Inc.—Richmond | Collection | Cleveland |
| Fashion Wear, Inc. | Collection | Cleveland |
| Five Twenty–Two Youngstown | Collection | Cleveland |
| Furs By Weiss | Collection | Cleveland |
| Gary Von Agency | Collection | Cleveland |
| General | Collection | Cleveland |
| General Nutrition, Inc. | Collection | Cleveland |
| Goodies Old Fashion Fudge | Collection | Cleveland |
| Great Expectations | Collection | Cleveland |

| Matter Name | Type of Matter | Office Handling |
|---|---|---|
| Manchu Wok | Collection | Cleveland |
| Designs, Inc. | Collection | Cleveland |
| Lota Kelly–WM. Kitt | Collections | Cleveland |
| Deli Table, Inc. (Great Lakes) | Contract | Cleveland |
| TLC Landscaping | Contract | Cincinnati |
| Blalark | Creditors' Rights | Cincinnati |
| Elwood Jee | Employment | Cincinnati |
| # 1 Kids, Inc. | FED/Collection | Cleveland |
| # 1 Sports | FED/Collection | Cleveland |
| A Store For Women, Inc. | FED/Collection | Cleveland |
| Accessory Place, Inc. | FED/Collection | Cleveland |
| Alexanders Flowers | FED/Collection | Cleveland |
| Arthur Treachers | FED/Collection | Cincinnati |
| Artistic Apparel | FED/Collection | Cincinnati |
| Audrey Jones, Inc. | FED/Collection | Cleveland |
| Becker's Uniform Mentor, Inc. | FED/Collection | Cleveland |
| Becker's Uniforms | FED/Collection | Cleveland |
| Century III Associates (GN) | FED/Collection | Cleveland |
| Cutler Ridge Assoc. (GN) | FED/Collection | Cleveland |
| Deli Table, Inc. # 1 | FED/Collection | Cleveland |
| Deli Table, Inc. # 2 | FED/Collection | Cleveland |
| Donald Mercer | FED/Collection | Cleveland |
| E & J Goldmaster's Inc. | FED/Collection | Cleveland |
| East Lake Square Assoc. (GN) | FED/Collection | Cleveland |
| Gift Garden | FED/Collection | Cleveland |
| Great Gyros, Inc. | FED/Collection | Cleveland |
| Gulf View Associates (GN) | FED/Collection | Cleveland |
| Handy Andy | FED/Collection | Cleveland |
| Hirt's, Inc. | FED/Collection | Cleveland |
| Hobby Center—246 Summit | FED/Collection | Cleveland |
| Hobby Center, Inc. | FED/Collection | Cleveland |
| House of Almonds, Inc. | FED/Collection | Cleveland |
| Jewelry Service Centers | FED/Collection | Cleveland |
| Jewelry Service Centers | FED/Collection | Cleveland |
| Joey's Candies | FED/Collection | Cleveland |
| Jon–Glo Enterprises, Inc. | FED/Collection | Cleveland |
| Lady D's Body Shaping | FED/Collection | Cleveland |
| Lafayette Square, Inc. (GN) | FED/Collection | Cleveland |
| Leather Inn | FED/Collection | Cleveland |
| Leathers Inn—Great Lakes | FED/Collection | Cleveland |
| M.H. Partners, Ltd. | FED/Collection | Cleveland |
| Melbourne JCP Assoc. (GN) | FED/Collection | Cleveland |
| My Fair Lady | FED/Collection | Cleveland |
| Natural Health & Nutrition | FED/Collection | Cleveland |
| Nelsons Photography Studio | FED/Collection | Cleveland |
| Nino International | FED/Collection | Cleveland |
| OM Imports | FED/Collection | Cleveland |
| Original Straws | FED/Collection | Cleveland |
| P.J. McIntyre's | FED/Collection | Cleveland |
| Paddock Mall Assoc. (GN) | FED/Collection | Cleveland |
| Paper Caper | FED/Collection | Cleveland |
| Pets 4 You | FED/Collection | Cleveland |
| Pinellas Square Assoc. (GN) | FED/Collection | Cleveland |
| R. Anne Weaver | FED/Collection | Cleveland |
| Rand Kollman | FED/Collection | Cleveland |
| Randall Park Mall Travel | FED/Collection | Cleveland |
| Record Den, Inc. | FED/Collection | Cleveland |
| Red Bird Mall (GN) | FED/Collection | Cleveland |
| Regency Mall Associates (GN) | FED/Collection | Cleveland |
| Reno Sales, Inc. | FED/Collection | Cleveland |
| Richmond Mall, Inc. (GN) | FED/Collection | Cleveland |

| Matter Name | Type of Matter | Office Handling |
|---|---|---|
| Robaric, Inc. | FED/Collection | Cleveland |
| Roger & Royce Stapleton | FED/Collection | Cleveland |
| Rugger's, Inc. | FED/Collection | Cleveland |
| Shaver's Icecream | FED/Collection | Cleveland |
| Shoe Care Centers | FED/Collection | Cleveland |
| Shoe Care Centers of Ohio | FED/Collection | Cleveland |
| Shuttler's | FED/Collection | Cleveland |
| Smith DBA Footnotes | FED/Collection | Cleveland |
| Sports Gifts 2, Inc. | FED/Collection | Cincinnati |
| Sumwalt's Keyboard Music, Inc. | FED/Collection | Cleveland |
| Swifton Common Project | FED/Collection | Columbus |
| The Added Touch | FED/Collection | Cleveland |
| The Beehive Card & Gifts, Inc. | FED/Collection | Cleveland |
| The Pizzaria Uno | FED/Collection | Cleveland |
| University Town Center Mall | FED/Collection | Columbus |
| Village Tobacconists | FED/Collection | Cleveland |
| Volbracht Furs, Inc. | FED/Collection | Cleveland |
| West Dade County Assn. (GN) | FED/Collection | Cleveland |
| Accent Hair | Forceable Entry & Detainer | Cleveland |
| Accent Hair Solons, Inc. | Forceable Entry & Detainer | Cleveland |
| Bag–A–Sweet Candy Company | Forceable Entry & Detainer | Cleveland |
| Bill's Clothes | Forceable Entry & Detainer | Cleveland |
| Boston Shirt Yard | Forceable Entry & Detainer | Cleveland |
| Connie Dunn | Forceable Entry & Detainer | Cleveland |
| David's Fine Jewelry | Forceable Entry & Detainer | Cleveland |
| Mary Birks | Insurance Defense | Cincinnati |
| Boardwalk Fries | Real Estate | Cleveland |
| Laura Salkin Bridals | Real Estate | Cleveland |
| Rose and Crown | Real Estate | Cleveland |
| The Brass Emporium | Real Estate | Cleveland |
| Kent Zoning Appeal | Zoning | Columbus |

TOTAL MATTERS: 113

---

EXHIBIT B

## DECOR CORPORATION PAYMENT DETAIL

Services Rendered by BFCA and Payments Received Within 30 Days of Bankruptcy

| Period Services Rendered | Description of Services Summary | Expenses | Fees | Total Amount Due | Adjustments | Amount Paid | Date Payment Received | Method of Payment |
|---|---|---|---|---|---|---|---|---|
| May–93 | Conferences regarding Claire's Stores, Inc., and work on restructuring issues ($3,795). Research regarding potential claims against Decor ($1,635). | $148 | $5,430 | $ 5,578 | ($2,677) | $2,901 | 4–Nov–93 | Check # 5105 |
| Jun–93 | Status conferences regarding restructuring. | $270 | $ 110 | $ 380 | $0 | $ 380 | 4–Nov–93 | Check # 5105 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Jul–93 | Work regarding restructuring of leases ($1896.25). Work in furtherance of obtaining a DIP lending facility ($825). Meeting with bondholder representatives; and work on plan development ($1,000). | $ 52 | $ 3,724 | $ 3,776 | $0 | $ 3,776 | 4–Nov–93 | Check # 5105 |
| Aug–93 | Work regarding lease restructurings ($4,470.50). Work regarding bankruptcy/lease issues ($1,367.50). Work regarding plan development matters and general bankruptcy planning issues ($1,397) Work in pursuit of DIP lending sources ($945). | $375 | $ 8,180 | $ 8,555 | $0 | $ 8,555 | 4–Nov–93 | Check # 5105 |
| Sep–93 | Work regarding lease litigation issues ($7,591.25). Work regarding lease restructurings ($1,072.50). Work regarding bankruptcy/lease issues ($273.75). Work regarding general Chapter 11 issues and plan development. ($627.50) | $312 | $ 9,565 | $ 9,877 | $0 | $ 9,877 | 10–Nov–93 | Check # 5105 ($4143) Wire Transfer ($5734) |
| Oct–93 | Detailed bankruptcy planning conferences, plan drafting, work regarding Claire's voting agreement and general bankruptcy issues ($9,130.25). Lease litigation work ($2,128.75) | $126 | $11,259 | $11,385 | $0 | $11,385 | 10–Nov–93 | Wire Transfer |
| November 1, 1993 through November 8, 1993 | Preparation of bankruptcy pleadings, plan of reorganization and DIP loan documentation; conferences regarding bankruptcy planning, research regarding tax issues affecting plan ($16,321.50). Work on lease litigation matters ($182.50) | $526 | $16,504 | $17,032 | $0 | $17,032 | 10–Nov–93 | Wire Transfer |

## SERVICE CATEGORY DETAIL
Summary of Fees Paid to BFCA Within 30 Days of Bankruptcy

| MONTH | LEASE LITIGATION | LEASE RESTRUC-TURING | BANK-RUPTCY LEASE RESEARCH | DIP LENDING ISSUES | CLAIRE'S ISSUES | BOND AND CLAIMS RESO-LUTION | PLAN DEVELOP-MENT AND GENERAL BANK-RUPTCY PLAN-NING | TOTAL |
|---|---|---|---|---|---|---|---|---|
| MAY | $0 | $0 | $0 | $0 | $3,795 | $1,635 | $0 | $5,430 |
| JUNE | $0 | $0 | $0 | $0 | $0 | $0 | $110 | $110 |
| JULY | $0 | $1,898 | $0 | $825 | $0 | $385 | $615 | $3,723 |
| AUGUST | $0 | $4,470 | $1,368 | $945 | $0 | $0 | $1,397 | $8,180 |
| SEPTEMBER | $7,591 | $1,073 | $274 | $0 | $0 | $0 | $628 | $9,565 |
| OCTOBER | $2,129 | $0 | $0 | $0 | $0 | $0 | $9,130 | $11,259 |
| NOVEMBER | $183 | $0 | $0 | $0 | $0 | $0 | $16,321 | $16,504 |
| TOTAL | $9,903 | $7,441 | $1,641 | $1,770 | $3,795 | $2,020 | $28,201 | $54,770 |