**In re DEPENDABLE FOOD PRODUCTS, INC., Debtor.**

**Paul I. KROHN, Esq., Plaintiff,**

**v.**

**ADM MILLING CO., Defendant.**

**Bankruptcy No. 193–12161–352.**
**Adv. No. 195–1089–352.**

United States Bankruptcy Court, E.D. New York.

March 29, 1996.

Finkel Goldstein Berzow & Rosenbloom, New York City by Kevin Nash for Plaintiff–Chapter 7 Trustee.

Dewey Ballantine, New York City by Stuart Hirshfield, for defendant.

Backenroth & Grossman, New York City, for Debtor.

Paul I. Krohn, Brooklyn, NY, Plaintiff–Chapter 7 Trustee.

MARVIN A. HOLLAND, Bankruptcy Judge:

Before this Court are cross-motions for summary judgment by Paul I. Krohn, Chapter 7 Trustee (hereinafter, the "Trustee") of the estate of the Debtor, Dependable Food Products, Inc. (hereinafter, the "Debtor"), and ADM Milling Co. (hereinafter, "ADM"), the Defendant in this adversary proceeding.

For the reasons that follow, we GRANT ADM's motion for summary judgment and DENY the Trustee's motion.

### FACTS

On March 15, 1993 (hereinafter, the "Petition Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On December 15, 1993, an order was entered converting the case to one under Chapter 7 of the Bankruptcy Code.

Before the conversion, the Debtor operated a wholesale and retail bakery. ADM supplied flour to the Debtor for use in the Debtor's business.

During the ninety days preceding the Petition Date (hereinafter, the "Preference Period"), ADM received twenty-two (22) separate payments from the Debtor and made new value shipments of flour to the Debtor immediately after seventeen (17) of those payments as follows (the schedule is adopted from the Trustee's Cross–Motion):

| PAYMENT DATE | PAYMENT ($) | SHIPMENT DATE | AMOUNT OF SHIPMENT ($) |
|---|---|---|---|
| 12/15/92 | 13,559.00 | | |
| 12/15/92 | 12,452.57 | 12/15/92 | 6,338.40 |
| 12/16/92 | 22,503.27 | 12/16/92 | 5,836.80 |
| | | 12/18/92 | 6,338.40 |
| | | 12/18/92 | 6,338.40 |
| | | 12/21/92 | 5,768.40 |
| | | 12/22/92 | 5,768.40 |
| | | 12/22/92 | 6,279.60 |
| | | 12/23/92 | 5,754.00 |
| | | 12/24/92 | 5,768.40 |
| | | 12/28/92 | 6,224.40 |
| 12/29/92 | 11,493.36 | 12/29/92 | 6,224.40 |
| | | 12/29/92 | 6,566.40 |
| 12/30/92 | 12,467.04 | | |
| 12/31/92 | 13,210.32 | 12/31/92 | 6,224.40 |
| 1/4/93 | 13,345.50 | 1/4/93 | 5,911.20 |
| 1/5/93 | 13,839.60 | 1/5/93 | 6,543.60 |
| 1/6/93 | 12,499.20 | 1/6/93 | 5,302.80 |
| 1/7/93 | 12,165.15 | 1/7/93 | 6,649.20 |
| 1/8/93 | 11,194.80 | 1/10/93 | 5,793.30 |
| | | 1/11/93 | 5,950.80 |
| | | 1/12/93 | 6,543.60 |
| | | 1/13/93 | 7,045.20 |
| 1/15/93 | 12,790.80 | | |
| 1/15/93 | 11,050.87 | 1/18/93 | 6,042.00 |
| | | | 6,499.20 |
| 1/19/93 | 12,787.00 | | |
| 1/20/93 | 12,540.00 | 1/20/93 | 7,037.40 |
| | | 1/20/93 | 6,589.80 |
| 1/21/93 | 12,858.10 | 1/21/93 | 6,976.80 |
| | | 1/21/93 | 12,842.56 |
| 1/22/93 | 13,472.40 | 1/22/93 | 6,589.20 |
| 1/25/93 | 12,724.90 | 1/25/93 | 6,178.80 |
| 1/26/93 | 12,608.40 | 1/26/93 | 6,589.20 |
| 1/27/93 | 13,864.90 | | |
| 1/28/93 | 12,426.00 | 1/28/93 | 6,178.80 |
| | | 2/1/93 | 6,530.40 |
| | | 2/2/93 | 6,178.80 |
| | | 2/3/93 | 6,440.70 |
| | | 2/7/93 | 5,892.00 |
| | | 2/9/93 | 6,042.00 |
| | | 2/9/93 | 6,406.80 |
| | | 2/10/93 | 6,520.80 |

| PAYMENT DATE | PAYMENT ($) | SHIPMENT DATE | AMOUNT OF SHIPMENT ($) |
|---|---|---|---|
| | | 2/12/93 | 6,018.00 |
| | | 2/15/93 | 6,522.90 |
| | | 2/15/93 | 6,365.32 |
| | | 2/18/93 | 6,657.60 |
| | | 2/19/93 | 6,110.40 |
| | | 2/19/93 | 5,916.20 |
| | | 2/23/93 | 6,406.80 |
| | | 2/24/93 | 5,791.20 |
| | | 2/24/93 | 5,928.00 |
| | | 2/25/93 | 6,406.80 |
| 2/26/93 | 12,842.56 | 2/26/93 | 5,920.00 |
| | | 2/26/93 | 6,406.80 |
| | | 2/28/93 | 5,954.00 |
| | | 3/1/93 | 6,854.20 |
| | | 3/2/93 | 6,384.00 |
| | | 3/2/93 | 12,638.46 |
| | | 3/3/93 | 5,840.40 |
| | | 3/4/93 | 6,384.00 |
| | | 3/5/93 | 6,361.20 |

On or about March 13, 1995, the Trustee commenced this adversary proceeding pursuant to 11 U.S.C. §§ 547 and 550 seeking the recovery of $301,463.74 transferred to ADM within the Preference Period. On May 12, 1995, ADM answered the complaint, interposing affirmative defenses based on 11 U.S.C. §§ 547(c)(2) and (c)(4). ADM and the Trustee each seek summary judgment.

### THE CROSS–MOTIONS FOR SUMMARY JUDGMENT

The parties agree that the payments made to ADM during the Preference Period constitute preferential transfers under 11 U.S.C. § 547(b)[1]. The dispute addressed by the cross-motions concerns the appropriate interpretation of the "new value" defense asserted by ADM and contained in 11 U.S.C. § 547(c)(4).

Section 547(c)(4) of the Bankruptcy Code provides in pertinent part:

The trustee may not avoid under this section a transfer—

**1.** Section 547(b) of the Bankruptcy Code provides in pertinent part:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
(A) not secured by an otherwise unavoidable security interest;
(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

As the above schedule indicates, seventeen (17) of the payments made during the Preference Period were followed by shipments of "new value" prior to any subsequent payment to ADM. Thus, with respect to these payments, the following chain of events occurred: payment—shipment(s)—payment—shipment(s), etc.

As to each of these seventeen payments, the Trustee concedes that they are subject to the "new value" defense. However, the Trustee maintains that new value shipments can be used only to offset the immediately preceding payment, and that to the extent the new value exceeds the immediately pre-

(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) . . .
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title; . . . .

ceding payment, such excess cannot offset earlier payments. To illustrate, assume that the following occurred after a long-standing unpaid balance:

> Payment # 1 made on January 1, 1995 in the amount of $10,000;
>
> Shipment # 1 made on January 5, 1995 in the amount of $10,000;
>
> Payment # 2 made on January 15, 1995 in the amount of $20,000;
>
> Shipment # 2 made on January 16, 1995 in the amount of $15,000;
>
> Payment # 3 made on January 18, 1995 in the amount of $30,000;
>
> Shipment # 3 made on January 19, 1995 in the amount of $55,000.

According to the Trustee's position, Shipment # 1 would completely offset and be a complete defense against Payment # 1; Shipment # 2 would partially offset and be a partial defense against Payment # 2 with the result that there is a preferential transfer avoidable to the extent that the payment exceeds the shipment (in this hypothetical, $5,000); Shipment # 3 would completely offset and be a complete defense against Payment # 3; *however, to the extent that the shipment exceeds the payment (in this hypothetical, $25,000) such excess cannot be used to offset prior payments such as Payment # 2 that had not been completely offset by prior shipments.*

Applying this theory to the five (5) payments made to ADM that were not followed by shipments of new value prior to the ensuing payment, the Trustee would have us hold that such payments are not subject to any new value defense.

In sum, with respect to all preferential payments, the Trustee asserts that "a creditor's shipment of new value may be applied to offset only the specific preferential transfer *immediately preceding that shipment.*" Trustee's Cross–Motion p. 2, ¶ 2. [emphasis in original]. In contrast, ADM contends that a single shipment of new value may be applied to offset any and all prior payments.

The differences between the parties' contentions is significant. Under the Trustee's view, ADM is liable to the Trustee for $125,-459.98. Under ADM's position, there is no preference liability.

## STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Fed.R.Civ.P. 56(c), made applicable to bankruptcy proceedings by Fed. R.Bankr.P. 7056, governs motions for summary judgment in the federal courts. The purpose of the motion is to dispose of issues which can be decided upon established, admitted or ascertainable facts without a trial. The court must deny summary judgment where there is a genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On the other hand, summary judgment is "appropriate . . . if the Court determines that 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.' " *United States Trust Co. v. LTV Steel Co. (In re Chateaugay Corp.),* 150 B.R. 529 (Bankr. S.D.N.Y.1993), *aff'd,* 170 B.R. 551 (S.D.N.Y. 1994) (*quoting, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

Since we have no disputed material facts, summary judgment is appropriate.

## DECISION

ADM seeks to offset its advances of new value against any and all prior payments. The Trustee is seeking to limit such offset to the payments immediately preceding the shipment of new value.

The Trustee cites *Leathers v. Prime Leather Finishes Company,* 40 B.R. 248 (D.Me.1984) under which "the creditor is protected only to the extent that it gives 'new value' subsequent to each preference but before the next payment is received from the debtor. This approach essentially divides the 90–day preference period into a series of isolated transactions in which the 'new value given' by the creditor is netted only against the immediately preceding preference." *In re Meredith Manor, Inc.,* 902 F.2d 257, 258–59 (4th Cir.1990).

*Leathers* has been sharply criticized and represents the minority view. *See In re Transport Assocs.,* 171 B.R. 232, 238 (Bankr. W.D.Ky.1994).

The majority view was first articulated in *In re Thomas W. Garland, Inc.,* 19 B.R. 920 (Bankr.E.D.Mo.1982), where the court rejected the *Leathers* approach, stating:

> The Debtor-in-Possession ... urges that section 547(c)(4) be interpreted to allow set off only of new value provided immediately after one preferential transfer and prior to the next preferential transfer. I hereby reject Garland's suggested interpretation of section 547(c)(4). Such an interpretation places limitations on the creditor's right of set off not found in the statutory language. In addition, this suggested interpretation, if applied, would be tantamount to treating the preferential transfer and subsequent unsecured advances as a substantially contemporaneous exchange, coverage of which is already provided for in section 547(c)(1).

*Garland,* 19 B.R. at 926.

Instead, the *Garland* court adopted an approach described as follows:

> This method looks at the 90–day preference period and calculates the difference between the total preferences and the total advances, provided that each advance is used to offset only prior (although not necessarily immediately prior) preferences. Unlike *Leathers, Garland* permits preferences to be carried forward until exhausted by subsequent advances. In other words, the creditor is allowed to apply the giving of "new value" against the immediately preceding preference as well as against all prior preferences.

*Meredith Manor,* 902 F.2d at 259.

Courts adhering to the majority view have supported their decisions on a number of grounds. In *In re Baumgold Bros.,* 103 B.R. 436 (Bankr.S.D.N.Y.1989), the court reasoned that "[i]f a creditor were not allowed to set off subsequent new value against a net balance of all prior preferences, there would be little incentive for him to continue shipping any new value to the debtor in excess of the immediately preceding payment, regardless of the amount of prior payments by the debtor." *Baumgold,* 103 B.R. at 440. The court in *Meredith Manor* followed the majority view on the basis that the *Garland* approach, "in addition to better serving the legislative goal of encouraging creditor assistance to financially troubled debtors, also reflects a more realistic view of commercial practices." *Meredith Manor,* 902 F.2d at 259.

Finally, the court in *Transport Assocs.* in comparing the two approaches stated that the *Garland* approach "better serves the legislative goal of encouraging creditors to continue doing business with financially troubled debtors [citation omitted].... In comparison, the *Leathers* approach ... would discourage creditors from advancing new value in excess of the amount of the prior invoice paid, regardless of debtor's need for an infusion of new value [citation omitted].... 'Such an artificial legal distinction would interfere with the ordinary commercial flow of goods and services to troubled debtors' [citation omitted]." *In re Transport Assocs.,* 171 B.R. 232, 239 (Bankr.W.D.Ky.1994).

Not having been addressed by the Court of Appeals for this circuit, we are free to choose the reasoning of either *Leathers* or *Garland.*

The Trustee would have us adopt the minority view because "[t]he *Leathers* decision is consistent with the overall policy underlying Section 547, which is to promote equality of distribution among creditors of the debtor and its estate," and [a]pplying the approach urged by ADM will permit a creditor to retain preferences to the detriment of other creditors...." Trustee's Cross–Motion p. 6, ¶ 18–19. We reject the Trustee's position.

First, under *Garland,* a creditor would have an offset against preferential payments only to the extent that it had provided new value subsequent to the payments. Thus, creditors can retain preferential payments only by *replenishing* the estate with new value. To the extent that new value is used to offset prior payments, there is neither monetary benefit or loss to either the estate or the preference creditor.

Second, creditors and the estate will actually benefit under the *Garland* approach be-

cause it encourages creditors to extend new value to financially troubled debtors. Under *Leathers,* creditors would not extend new value to the extent it exceeds the amount of the immediately preceding preferential payment. Under this approach, debtors that do not have sufficient funds to pay for all of the subsequent goods or supplies they need would be unable to secure such goods.

Third, preference actions are rarely, if ever, fully recoverable. Settlement for substantially less that the amount sued for is commonplace, and in those rare instances where significant judgments are obtained, they are achieved only after expensive legal fees have been incurred. As a practical matter, the only way that a debtor can obtain full face value for its potential preference recovery is by offset against new value provided by the creditor. By providing a greater incentive for creditors to make additional shipments to the debtor, *Garland* enables the debtor to recover full face value of the payments offset thereby.

■ Finally, *Leathers* places a limitation on the new value defense that simply does not exist in the language of 11 U.S.C. § 547(c)(4). As set forth above, 11 U.S.C. § 547(c)(4) provides, in pertinent part, that the "trustee may not avoid ... a transfer ... to the extent that, *after such transfer,* such creditor gave new value to or for the benefit of the debtor...." [emphasis added]. We find it compellingly persuasive that Congress did not place the word "immediately" before the words italicized above. Had Congress intended the *Leathers* approach, it could have provided for the language of the statute to read *"immediately* after such transfer" or *"immediately* after such transfer *and prior to any additional transfer(s)* ". "Our task is to apply the text, not to improve upon it." *Pavelic & LeFlore v. Marvel Entertainment,* 493 U.S. 120, 126, 110 S.Ct. 456, 459–60, 107 L.Ed.2d 438 (1989). Just as the fact that the intervention of Tuesday between Monday and Wednesday does not alter the fact that Wednesday occurs after Monday, the intervention of new value between the payment and subsequent additional new value does not alter the fact the subsequent new value occurred after the payment.

■ Concurring with *Garland's* majority position, we hold that ADM may properly apply new value not only against the immediately preceding preferential payment, but all earlier preferential payments as well.

ADM shall settle an order consistent with the foregoing within fifteen days.